Argued and submitted January 23, reversed and remanded for new trial
October 18, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## KIMBERLY ANN TAYLOR,
*Appellant.*

## (DA1017440; CA A84690)

904 P2d 191

Garrett A. Richardson argued the cause for appellant. With him on the brief was Multnomah Defenders.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Haselton and Armstrong, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant appeals her conviction for theft in the second degree. ORS 164.045. She argues that the trial court improperly admitted hearsay evidence. We reverse.

On December 18, 1993, Thorpe, security manager at a Portland Fred Meyer store, observed an unidentified woman enter the store, take a shopping cart, and proceed directly to the housewares department. She looked at various small appliances for one to two minutes and then placed a pasta machine and a mixer on the bottom rack of her shopping cart. The woman then pushed the cart to the toy department, where she met and talked to defendant for a few minutes. Thorpe testified that it took the woman 30 to 40 seconds to reach the toy department. He also testified that he did not see defendant enter the store. After their conversation, Thorpe saw defendant accompany the woman as she took the cart to the customer service counter at the front of the store. Thorpe observed the unidentified woman talk to one of the customer service employees, but could not hear the exchange. After the conversation, the unknown woman walked off and defendant pushed the cart with the merchandise in it out of the store.

Thorpe then called the customer service employee to determine the content of the conversation. The employee told him that the unidentified woman had attempted to return the merchandise and that, in accordance with store policy, the employee had asked for identification because the value of the merchandise exceeded $20. The employee told Thorpe that the woman had stated that she did not have identification. According to the employee, defendant then pushed the cart out of the store and the unidentified woman walked off in another direction.

Thorpe did not pursue the unidentified woman, but instead confronted defendant outside the store. Defendant told him that she had not stolen the merchandise. She stated that she had simply followed the unidentified woman's instructions to take the items out to the car. Defendant later told Thorpe that the unidentified woman was her friend and that they had arrived at the store in the same car.

At trial, the prosecutor asked Thorpe to describe what the customer service employee told him about the conversation with defendant and her friend. Defendant objected on hearsay grounds. The prosecutor responded that Thorpe's testimony was not hearsay, because it was not being offered to prove the truth of the conversation but to explain Thorpe's actions in stopping defendant outside the store in that "[i]t verified to him that [defendant was] not legitimately in possession of those items." The trial court held that the testimony was hearsay, but admissible under the authority of OEC 403 and OEC 404. The court explained:

"It's hearsay, but some hearsay is admissible, if we can find the exception.

"* * * * *

"So, [OEC] 403, I have to balance this to see whether the probative value is greater than the prejudicial value or the prejudicial value is greater than the probative value.

"* * * * *

"But we take [OEC] 404, we can almost get anything in. Rule 404, because what we're dealing with now, based on your statement to the jury and this unknown other person, this unknown, this unknown phantom female, evidence of other crimes, wrongs, or acts, * * * is not admissible to prove the character of a person or to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Clearly in this case, this type of information would have a greater probative value than a prejudicial value and has to be admitted."

■ Defendant argues that the trial court erred in admitting, under OEC 403 and OEC 404, the evidence of the conversation between the unidentified woman and the customer service employee. The state concedes that the trial court erred in admitting the testimony on the ground that it did. However, the state argues that we should affirm the trial court on its alternative theory, presented at trial, that the testimony was not hearsay, because it was offered as an explanation for Thorpe's conduct in stopping defendant.[1]

---

[1] The state accurately points out that the admissibility of Thorpe's testimony potentially poses a double hearsay problem, in that "[his testimony] not only

Alternatively, the state argues that, even if the admission of the evidence was error, it was harmless.

■        The problem with the state's argument that the evidence is not hearsay, as pointed out by defendant at oral argument, is that, even if correct, it does not rectify the error committed by the trial court. Generally, it is true that we will not reverse a trial court when it makes a "correct ruling admitting evidence but articulates an erroneous reason for it." *State v. Nielsen*, 316 Or 611, 629, 853 P2d 256 (1993). However, there are circumstances when the application of that general rule is inappropriate. We believe that this case involves such circumstances. Here, the trial court admitted Thorpe's testimony for a qualitatively different purpose than that advanced by the state on appeal. It did not limit the purpose of the testimony, as the state proposed, as nonhearsay for the restricted purpose of showing Thorpe's motivation. Had the trial court done so, defendant could have asked for a limiting instruction requiring the jury to consider it for only that purpose. However, because the trial court ruled that the evidence was admissible hearsay under OEC 404, there was no longer any basis upon which defendant could ask for such an instruction. Thus, even if correct in the abstract, the state's nonhearsay argument does not remedy the practical effects of the trial court's error, which allowed the jury to consider the evidence for all purposes. Thus, we decline to affirm on the alternative ground asserted by the state.

■■        We next consider whether the error was prejudicial. OEC 103(1) provides:

> "Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

A substantial right of a party is not affected, *i.e.*, error is harmless, when there is little likelihood that the error

---

involves the clerk's statements to Thorpe, but also the woman's statements to the clerk." To be admissible, OEC 805 requires both levels of double hearsay evidence to fall within an exception listed in OEC 803 or OEC 804 or constitute nonhearsay. *See Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 389 n 7, 856 P2d 625 (1993). However, at trial, defendant did not specifically raise the double hearsay problem in her hearsay objection. Nor does defendant raise that issue on appeal. Instead, defendant appears to base her hearsay objection on only the first level of hearsay, the customer service employee's comments to Thorpe.

affected the verdict. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). Here, the critical issue at trial was whether defendant knew that her friend had not purchased the merchandise. The state argues:

> "The only rational conclusion the jury could draw from the evidence was that she did have that knowledge. That is, after Thorpe stopped defendant with the merchandise, she admitted to him that she and the other woman he had observed were friends and had come together to the store in the same car. Thus, defendant must have known that the other woman had not brought the items into the store with her. Further, Thorpe's testimony established that the other woman had selected the items from the housewares department very quickly, that she then joined defendant in the toy department, where the two talked, and that they then proceeded together to the customer service center, where one of them spoke to a store clerk, then separated. Given that defendant accompanied her friend as the friend pushed the cart around the store and was present when her friend left the store, defendant must have known that the items never had been purchased."

In our view, the evidence on which the state relies does not necessarily compel the conclusion that defendant must have known that her friend had failed to purchase the merchandise. The state emphasizes that defendant was separated from her friend for too short a period of time for defendant to believe that her friend had purchased the merchandise. However, the record is not entirely clear as to how long defendant and her friend were actually separated once they arrived at the store together. According to Thorpe, it took defendant's friend nearly three minutes after entering the store to meet defendant in the toy section. However, there is no evidence as to when defendant entered the store or whether defendant knew when her friend had entered the store. Thorpe testified that when he observed defendant's friend enter the store, defendant was not present. Thus, the evidence does not clearly establish how long defendant and her friend were actually separated, and it does not compel the conclusion that defendant must have known that her friend had not been in the store long enough to purchase the merchandise.

Defendant argues that the trial court's error was prejudicial because it "allowed the prosecutor the opportunity to argue that the jury should infer defendant's knowledge of guilt because she was standing next to the unknown female at the counter at the time of the conversation and therefore knew that the refund had been denied and that the merchandise was not legitimately in the possession of the unknown woman." The record reveals that the state did rely on Thorpe's testimony about the conversation at the customer service department in arguing that defendant should have known that her friend had not purchased the merchandise. In closing argument, the prosecutor stated:

"[Defendant and her friend] walk together over to the customer service representative. And the conversation then ensues there, is along the lines of 'Can we return these items? Can we get cash back for them?' And the customer service person says, 'No, not without a receipt[2] and identification.' So, that plan having failed, what happens next is the defendant tries to slide out one of the doors."

In its closing rebuttal, the state argued that the evidence showed that defendant "knew that [the merchandise] wasn't paid for." Thus, it is apparent that the state did use Thorpe's testimony regarding the conversation at the customer service desk to bolster its case against defendant. We are unable to conclude that there is little likelihood that the trial court's error in admitting Thorpe's testimony affected the verdict.

Reversed and remanded for a new trial.

---

[2] We note that Thorpe did not testify that the customer service employee asked defendant's friend for a receipt.